United States Court of Appeals,

Fifth Circuit.

No. 95-30926.

FEDERAL DEPOSIT INSURANCE CORPORATION, as statutory successor to Resolution Trust Corporation, in its corporate capacity, Plaintiff-Appellant,

v.

Gerald C. BARTON, Gerald G. Rothman, William W. Vaughn, Peter R. Kirwin-Taylor, Gilbert I. Newman, Jack G. Golson, Norman L. Peck, Bernard Ille, Albert Reichman, Joe W. Walser, Jr., and Joseph V. Olree, Defendants-Appellees.

Sept. 26, 1996.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, DeMOSS and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The Federal Deposit Insurance Corporation appeals from a summary judgment in favor of Appellees. For the reason stated below, we AFFIRM the decision of the district court.

I.

BACKGROUND

The Federal Deposit Insurance Corporation ("FDIC") appeals from the district court's dismissal of its suit against the former directors ("the Directors") of Oak Tree Savings Bank ("Oak Tree"). The Resolution Trust Corporation ("RTC")[1] sued the Directors, alleging that they caused over $200 million in losses by being grossly negligent in managing the thrift and its lending practices in the 1980's. The Directors moved to dismiss the suit on the ground of liberative prescription.[2] The district court, holding that the RTC's claims were time-barred, granted the Directors' motion and dismissed this suit. The FDIC appeals from that dismissal.

---

[1]The RTC ceased operations on December 31, 1995 in accordance with 12 U.S.C. § 1441a(m)(1) (1995 Supp.). Its statutory successor is the FDIC. Therefore, the FDIC has been substituted for the RTC in this action.

[2]Louisiana's statutes of liberative prescription are its equivalent to a common law state's statutes of limitations.

1

Before its failure in 1991, Oak Tree was Louisiana's largest thrift.  The Directors served on Oak Tree's board when it approved the four loans and one land purchase that are the subject of this lawsuit.  The Directors approved the first of those transactions in 1984, and the last of them in 1989.  The FDIC alleges that Oak Tree lost over $200 million on those transactions and that the transactions occurred because the Directors were grossly negligent.  The FDIC also alleges that the Directors breached their fiduciary duty to Oak Tree by being grossly negligent.

On October 13, 1991, the Office of Thrift Supervision ("OTS") closed Oak Tree and appointed the RTC as its receiver.  Three years later, on October 12, 1994, the RTC filed its original complaint against the Directors, alleging that they were grossly negligent in approving five transactions between 1984 and 1989.  The RTC later amended its complaint to allege that the Directors breached their fiduciary duty to Oak Tree by being grossly negligent.  The Directors moved to dismiss the action on the ground of liberative prescription.

In deciding the Directors' motion to dismiss, the district court had to decide several issues.  First, it had to decide which statute of prescription applied.  The Directors argued that Louisiana Revised Statutes Section 6:787, which was enacted after the RTC was appointed receiver, applied.  In the alternative, the Directors argued that the one-year prescriptive period for delictual actions applied.  In response, the FDIC contended that the ten-year prescriptive period for personal actions applied.  For reasons that will be discussed below, the district court held that the one-year prescriptive period applied.

Next, the district court had to decide whether the doctrine of *contra non valentem agere nulla currit* apeld that the doctrine tolled prescription during the period that the Directors' domination of Oak Tree's board prevented Oak Tree from suing them.  However, the district court found that prescription ceased to be tolled as early as September 11, 1990, when the OTS had the power to appoint a receiver but chose instead to enter into a Supervisory Agreement with the institution.  Because the prescriptive period began to run on September 11, 1990, the court reasoned, Oak Tree's claim against the Directors was prescribed when the RTC was appointed receiver in October 1991.

2

Therefore, the district court dismissed the suit on the ground of prescription.

## II.

## DISCUSSION

The district court held that the FDIC's claims against the Directors were barred by prescription. The FDIC appeals from this holding, arguing that: (1) the claims were not prescribed because Louisiana's ten year prescriptive period for personal actions applied; and (2) alternatively, assuming that Louisiana's one year prescriptive period applied, prescription was tolled by the doctrine of *contra non valentem agere nulla currit*. The Directors counter by arguing that the FDIC's claims were prescribed by either Louisiana's one-year prescriptive period for delictual actions, or by Louisiana Revised Statutes Section 6:787, a statute that applies special prescriptive and peremptive periods in suits against savings and loan officers and directors. The Directors also contend that *contra non valentem* does not apply in this case. For the reasons stated below, we hold the FDIC's claims are barred by prescription.

## A.

We first turn to the question of whether Louisiana Revised Statutes Section 6:787 applies to the FDIC's claims. Section 6:787 provides a one-year prescriptive period and a three-year peremptive period in suits against savings and loan officers and directors.[3] If Section 6:787 applies, the Directors contend that it would bar the FDIC's claims against them.

We hold that Section 6:787 does not apply in this case because the RTC was appointed receiver eight months before the section was enacted. The Financial Institutions Reform, Recovery,

---

[3]Section 6:787(A) provides:

> No action for damages against any director or officer of a financial institution for breach of the director's or officer's ... duty as a director or officer, including, without limitation, actions for gross negligence ... shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

and Enforcement Act of 1989 ("FIRREA") provides a federal statute of limitations for claims brought by the RTC as receiver.[4] This statute, however, does not allow the RTC to bring a state law claim that had expired before the RTC was appointed receiver.[5] Therefore, this Court requires district courts to use a two-step analysis in determining whether the RTC's claims are barred by limitations. First, the district court must "determine whether the claims being brought by the [RTC] were viable under the applicable state statute of [prescription] at the time the [RTC] was appointed receiver."[6] If the state statute of prescription has not yet run when the RTC was appointed receiver, then the district court must determine whether FIRREA's statute of limitations has run; that is, whether the RTC filed its claim within three years from the date it was appointed as receiver.[7]

In this case, the applicable statute of prescription in effect on October 13, 1991 (the date upon which the RTC was appointed receiver) was set out in Louisiana Civil Code Article 3492.[8] Section 6:787 did not become effective until June 30, 1992. Therefore, the district court correctly looked to Article 3492, the law in effect at the time the RTC was appointed receiver, rather than Section 6:787, when determining whether Oak Tree's claims were viable at the time that the RTC was appointed receiver.

The Directors contend that this Court should apply Section 6:787 retroactively, and use it to determine whether Oak Tree's claims were time-barred at the time the RTC was appointed receiver. The Directors' argument is premised upon the Act that enacted Section 6:787, which provided that "[t]he provisions of this Act shall be applied both retrospectively and prospectively...."[9] Because the

---

[4] *F.D.I.C. v. Dawson,* 4 F.3d 1303, 1306 (5th Cir.1993) (citing 12 U.S.C. § 1821(d)(14)), *cert. denied,* --- U.S. ----, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994).

[5] *Id.* at 1307.

[6] *Id.*

[7] *Id.*

[8] This Court's holding that Article 3492, rather than Article 3499, applies, and the rationale behind that holding, is set out in Part II.B, *infra.*

[9] 1992 La.Act 586, § 2.

4

retroactive application of Section 6:787 would undermine FIRREA's statutory scheme, however, we reject the Directors' argument.

The purpose of FIRREA's preemption of state statutes of limitations is to give the RTC three years from the date upon which it is appointed receiver to decide whether to bring any causes of action held by a failed savings and loan. This three-year period allows the RTC to investigate and determine what causes of action it should bring on behalf of a failed institution. Allowing a state statute enacted after the RTC was appointed receiver to take a claim away from the institution is inconsistent with this purpose. We therefore hold that, in determining whether an institution held a viable claim at the time the RTC was appointed receiver, courts must look to the law in effect at the time of appointment.

B.

We now turn to the question of whether Louisiana Civil Code Article 3499 or Article 3492 provides the applicable prescriptive period in this case. Article 3499 provides a ten-year prescriptive period in personal actions, including actions for breach of fiduciary duty. Article 3492 provides a one-year prescriptive periods for delictual actions, including actions for gross negligence. Because this case merely involves allegations of gross negligence, rather than fraud or self dealing, we hold that it is a delictual action subject to Article 3492's one-year prescriptive period.

The FDIC argues that its claims against the directors are personal because they involve a breach of fiduciary duty. Louisiana Revised Statutes Section 6:291 imposes a fiduciary duty upon the Directors. That fiduciary duty is the only duty that the Directors owed Oak Tree, the FDIC argues, and the standard to which the Directors are held under that duty is gross negligence. Because the duty is a fiduciary one, the FDIC contends, an action for the breach of that duty is personal, and is subject to Article 3499's ten-year prescriptive period. We reject this argument.

As mandataries, the Directors owed two types of duties to Oak Tree: a fiduciary duty and

5

a duty of care.[10]  Actions for a breach of the fiduciary duty are personal, and are subject to Article 3499's ten-year prescriptive period.[11]  Actions for a breach of the duty of care are delictual, and are subject to Article 3492's one-year prescriptive period.[12]

In this case, the FDIC has only alleged a breach of the duty of care.  To set out a claim for the breach of fiduciary duty, the FDIC would have to have alleged the failure of good faith and loyalty by the Directors.[13]  In this case, however, the FDIC merely alleged that the Directors breached the fiduciary duty owed to Oak Tree by being grossly negligent.  Gross negligence is a violation of the duty of care, but unless it is coupled with fraud, a breach of trust or other ill acts, it does not constitute a breach of fiduciary duty.  Because the FDIC has only alleged a breach of the duty of care,[14] its claims against the directors are delictual, and are subject to Article 3492's one year prescriptive period.

## C.

The FDIC contends that prescription was tolled by the doctrine of *contra non valentem agere nulla currit.*[15]  That doctrine "suspends the running of the prescriptive period for a limited category

---

[10]*See Gerdes v. Estate of Cush,* 953 F.2d 201, 204 (5th Cir.1992) (Noting that different prescriptive periods apply to suits against mandataries depending on whether a breach of fiduciary duty or a breach of the duty of care is alleged).  *Cf.* La.Rev.Stat. § 6:787 (applying two different prescriptive and peremptive periods in actions against thrift directors:  one set of periods for breaches of the duty of care, another for breaches of fiduciary duty, fraud and the like).

[11]*Gerdes,* 953 F.2d at 205.

[12]*Id.*

[13]*FDIC v. Duffy,* 47 F.3d 146, 152 (5th Cir.1995) (quoting *Gerdes,* 953 F.2d at 205).

[14]We recognize that the FDIC has attempted to label its gross negligence claim as a claim for breach of fiduciary duty.  However, the FDIC cannot change the nature of its claim from a delictual one to a personal one simply by calling it a breach of fiduciary duty claim.  Because the FDIC has only alleged gross negligence, it has only alleged a breach of the delictual duty of care.

[15]"No prescription runs against a person unable to bring an action."  BLACK'S LAW DICTIONARY 327 (6th ed. 1990).

of claimants who are unable to bring suit."[16]  Under Louisiana law, there are four categories of

situations in which the doctrine applies:

> The doctrine may suspend the running of the prescriptive period where (1) there was some legal cause that prevented the courts or their officers from taking cognizance of or action on the plaintiff's action;  (2) there was some condition coupled with the contract or connected with the proceedings that prevented the creditor from suing or acting;  (3) the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action;  or (4) the cause of action is not known or reasonably knowable to the plaintiff, even though his ignorance is not induced by the defendant.[17]

The district court held that the second category—some condition coupled with the contract

or connected with the proceedings that prevented the creditor from suing or acting—applied, and that

the other categories did not apply.  The FDIC contends that the third category—the debtor himself

has done some act effectively to prevent the creditor from availing himself of his cause of

action—also applies.  The Directors argue that neither category applies.

We first turn to the question of whether the second category applies.  The district court held

that it applied because Oak Tree was unable to bring suit because it could only act through the

Directors, who could hardly be expected to sue themselves.  We disagree.  Oak Tree's shareholders

could have brought a shareholders' derivative suit against the Directors.[18]  Therefore, the fact that the

---

[16]*Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 294 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

[17]*Id.* at 294 (citing *Whitnell v. Menville,* 540 So.2d 304, 308 (La.1989)).  The Louisiana Supreme Court, in *Bouterie v. Crane,* 616 So.2d 657, 662 (La.1993), also applied the doctrine in a case that did not fit squarely into any of the four categories, but was closely analogous to the second category.  It should be noted, however, that *Bouterie* presented a much more compelling case for extending to doctrine than the case at bar.  In *Bouterie,* a minor was sexually abused and then put into state custody.  The minor could not bring an action on her own behalf during her minority, and Louisiana law was unclear on who had the power to bring a cause of action for her while she was in state custody.  The one year prescriptive period ran while she was in state custody.  Although the case did not fit squarely into one of the four categories, the court applied the doctrine and allowed the minor to sue the woman who molested her.  The case at bar, on the other hand, merely involves savings and loan officers who were allegedly negligent in approving bad loans;  it does not involve the same kind of intentional and abhorrent conduct present in *Bouterie.*  Therefore, we will not extend the doctrine beyond the four traditional categories in this case.

[18]*See, e.g., Palowsky v. Premier Bancorp, Inc.,* 597 So.2d 543, 545 (La.Ct.App.1992) (noting that "a shareholder may ... sue to recover losses to a corporation resulting from mismanagement and breaches of fiduciary duties [on the part of its directors] secondarily through a shareholder's

Directors controlled Oak Tree did not make it impossible for Oak Tree to sue them. As stated below, the Directors in this case did not hide anything from the shareholders, regulators, or the public. There is nothing that the Directors did which would have kept the shareholders from filing suit. Because Oak Tree could have sued the Directors through a shareholder derivative suit, we hold that the second category does not apply.

The third category does not apply either. The third category only applies when there is evidence of fraud, deceit, misrepresentation or concealment by the defendants that led to the plaintiff's failure to file the claim within the statutory period.[19] In this case, the FDIC has not alleged any such facts. It has only alleged that the Directors were grossly negligent in approving certain transactions; it has not alleged that the Directors concealed or misrepresented their actions. Therefore, the third category does not apply.

Because this case does not fall into any of the four categories of situations in which *contra non valentem* tolls prescription, we hold that the district court erred in applying the doctrine to toll the FDIC's claims.[20]

### III.

### CONCLUSION

We AFFIRM the district court's grant of summary judgment for the Directors. The FDIC's claims are based on alleged gross negligence that occurred in the 1980's. These claims are subject to a one year prescriptive period, and were not tolled by the doctrine of *contra non valentem agere*

---

derivative suit.").

[19]*See Rogers,* 42 F.3d at 295 (stating that the third category "is applied in situations involving concealment, fraud, misrepresentation and other ill practices."); *Fontenot v. ABC Ins. Co.,* 674 So.2d 960, 963 (La.1996) (holding, in a medical malpractice case, that "[t]o trigger application of the third category, a physician's conduct must rise to the level of concealment, misrepresentation, fraud or ill practices.").

[20]Because we hold that *contra non valentem* did not apply, we do not reach the issue of whether the doctrine's tolling of the prescriptive period ceased when the OTS obtained the power to appoint the RTC as receiver. We do note, however, that we are uncomfortable with the district court's holding that tolling ceased at the time the RTC could have been appointed receiver, rather than at the time it was actually appointed receiver.

8

*nulla currit.* Therefore, they were prescribed at the time the RTC was appointed receiver in 1991, and summary judgment for the Directors on the ground of prescription was proper.